UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

CHRISTOPHER SANDERS,

            Plaintiff,

v.                                     Case No. 3:22-cv-668-BJD-PDB

MARK INCH, et al.,

            Defendants.

_____

## ORDER

Plaintiff, an inmate of the Florida penal system, initiated this action pro se by filing a complaint for violation of civil rights (Doc. 1; Compl.) and a motion for temporary restraining order and preliminary injunction (Doc. 2; Pl. Mot.). Plaintiff has not paid the filing fee or moved to proceed in forma pauperis. It appears he may not intend to proceed as a pauper because, in a notice (Doc. 3), Plaintiff contends he has tried obtaining copies of his complaint so he can serve the twenty-five named Defendants himself, but prison officials will not make copies for him without a Court order.

Regardless of whether Plaintiff seeks to proceed as a pauper, the Court is obligated to screen his complaint before service. See 28 U.S.C. § 1915A(a) ("The court shall review, before docketing, if feasible, or, in any event, as soon

as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity."). Additionally, the Court will rule on Plaintiff's motion for injunctive relief.

**Complaint Allegations**

Plaintiff alleges officers and administrators violated his constitutional rights over the course of one year when he was housed at Florida State Prison (FSP). He asserts Mark Inch, former Secretary of the Florida Department of Corrections (FDOC) allowed him to be transferred back to FSP in April 2021, even though Inch knew Plaintiff's life would be in danger there because he had a lawsuit pending against "several staff members and officers at FSP." Compl. at 9. Plaintiff alleges that, on June 28, 2021, he notified Warden Davis that Sergeant Tyre threatened him because Tyre's wife was a named Defendant in that lawsuit, and Plaintiff feared for his life. Id.

Plaintiff remained at FSP and allegedly was harassed, threatened, and subjected to unnecessary uses of force between June 2021 and June 2022. According to Plaintiff, on June 29, 2021, Sergeant Tyre orchestrated a use-of-force against him after he attempted to overdose by swallowing pills. Id. at 17. He alleges Defendants Willis, Mason, Aikins, and Smith were involved either in the force incident or ignored his suicide attempt, and Sergeant Tyre

2

destroyed his personal property. Id. at 17-18. Plaintiff alleges Sergeant Tyre continued threatening him after the June 29th incident, orchestrating unnecessary strip searches, writing unwarranted disciplinary reports against him, and tampering with his food. Id. at 19-20. In September, Plaintiff went on a hunger strike, but Sergeant Tyre refused to pull him out of his cell for a medical callout. Id. at 19.

On about October 14, 2021, Sergeant Tyre allegedly threatened to have Plaintiff gassed and put on strip status, so Plaintiff again swallowed pills when officers and a mental health counselor came to his cell. Id. at 20-21. Plaintiff alleges the mental health counselor, Defendant Dahlman, ignored his suicide attempt, and then a cell extraction team, which included Defendants Aikins, Prock, Allen, and Reagor, used excessive force against him, while Defendant Woods watched. Id. at 21. Plaintiff alleges he was thereafter forced to sleep on a bare steel bunk with no clothes for four days, which led to another hunger strike. Id. at 23. He wrote grievances to Defendants Inch and Davis but received no responses. Id. On October 18, 2021, Plaintiff personally spoke with Warden Davis to report what happened. Id. Warden Davis then had Plaintiff moved to a different wing of the prison. Id. at 24.

Plaintiff alleges that from November 7, 2021, through January 28, 2022, an officer on his new wing, Defendant Prock, made sexual comments and

sexual advances toward him. Id. When Plaintiff reported the incidents, Defendant Prock would retaliate by denying Plaintiff meals or callouts and writing false disciplinary reports. Id. On about February 4, 2022, Defendant Mason allegedly told Plaintiff that Defendants Prock and Gwara "wanted [him] sprayed," but medical would not authorize it, so instead they decided to put him on strip status. Id. Defendant Mason arranged a cell extraction team, and, during the extraction, Defendants Mason and Gwara destroyed Plaintiff's personal property. Id. at 24-25.

In mid-April 2022, someone from the Inspector General's Office interviewed Plaintiff about his allegations of sexual abuse against Defendant Prock. Id. at 25. Defendant Prock allegedly continued threatening Plaintiff after the interview. Id. On April 27, 2022, Defendant Prock put Plaintiff on strip status for an allegedly fabricated reason. Plaintiff alleges Defendant Wendorff helped carry out the order to put Plaintiff on property restriction and told Plaintiff "he was gonna gas [Plaintiff] and show [him] he [Wendorff] wasn't to be f*cked with." Id. Plaintiff alleges Defendant Emanoilidis, a mental health doctor, came to his cell for "crisis intervention." Id. In front of Dr. Emanoilidis, Plaintiff swallowed "a bunch of pills," but the doctor just walked away. Id. at 26. Defendant Wendorff then sprayed Plaintiff, and, after Plaintiff was taken to the ground, Defendant Prock "tr[ied] to grind himself against [Plaintiff's]

butt[ocks]." Id. Plaintiff alleges Defendant Wendorff falsely stated that Plaintiff remained disorderly and ordered Defendant Fogarty to spray him a second time. Id.

Plaintiff then was placed in a self-harm-observation-status cell. Id. He alleges that while there, he did not eat, but that was not documented. Id. at 27. Dr. Emanoilidis visited Plaintiff at his cell on April 28, 2022, and allegedly told Plaintiff he was releasing him the following day "because [Defendant] Wendorff was not done with [him]." Id. On April 29, 2022, Defendant Woods allegedly returned Plaintiff to Defendant Prock's wing, so "[Prock] could take care of [him]." Id. Plaintiff alleges Defendant Prock has continued to "ma[k]e … jokes about how soft [his] butt[ocks] is and how he was grinding" against Plaintiff on April 27, 2022. Id. at 28. Plaintiff contends he wrote several grievances and "TRO's," but nothing has been done about the abuse he has endured. Id.

Allegedly, on May 27, 2022, Defendant Gonzalez informed Plaintiff Defendant Prock wanted to place him on strip status again. Id. Defendant Woods went to Plaintiff's cell with mental health officer Dahlman. Id. at 29. Plaintiff swallowed pills in front of them, and Plaintiff was sprayed. Id. Plaintiff again went on a hunger strike, but Defendants Prock and Gonzales did not document that he had not eaten. Id. at 30. Plaintiff states, "As of [May

30, 2022,] I am still on a hunger strike, and Warden Davis and Asst. Warden Bennett are refusing to give me protection from my abusers."[1] Id.

In addition to the specific instances of abuse Plaintiff mentions, he also complains about other conditions of his confinement, including the lack of privileges afforded to inmates on Close Management status, the interference with his grievances, the interference with his religious practice or observation, the lack of mental health treatment for his PTSD, and the denial of due process with respect to disciplinary charges brought against him. Id. at 30-33.

As relief, Plaintiff seeks a permanent injunction and damages. Id. at 9.

**Motion for Injunctive Relief**

By motion, Plaintiff seeks a preliminary inunction "to ensure that [he is] not further abused [or] beaten and given the necessary protection and to ensure all [his] grievances are processed and properly addressed." Pl. Mot. ¶ 1. He mentions having been assaulted over the course of about one year, specifically mentioning the injuries he sustained from the October 14, 2021 incident. Id. ¶ 2. He contends he is suffering irreparable harm and is in danger of future sexual, mental, and physical abuse because there is "an informal policy at

---

[1] In light of Plaintiff's assertions, in an abundance of caution, the Clerk of Court sent a copy of Plaintiff's filings (Docs. 1, 2) and the Court's Amended Standing Order (Doc. 4) that is entered when an inmate makes a claim of suicidal intent or other imminent physical harm to the Inspector General and to the Warden of Plaintiff's institution.

[FSP] [of] giving low . . . priority to the saf[e]ty of Black, Latin, or Gay Inmates." Id. ¶¶ 6, 7.

Injunctive relief, whether in the form of a temporary restraining order or a preliminary injunction, "is an 'extraordinary and drastic remedy,' and [the movant] bears the 'burden of persuasion.'" Wreal, LLC v. Amazon.com, Inc., 840 F.3d 1244, 1247 (11th Cir. 2016) (quoting Siegel v. LePore, 234 F.3d 1163, 1176 (11th Cir. 2000)). To demonstrate entitlement to injunctive relief, a movant must show the following four prerequisites:

> (1) a substantial likelihood of success on the merits; (2) that irreparable injury will be suffered if the relief is not granted; (3) that the threatened injury outweighs the harm the relief would inflict on the non-movant; and (4) that entry of the relief would serve the public interest.

Schiavo ex rel. Schindler v. Schiavo, 403 F.3d 1223, 1225-26 (11th Cir. 2005). With respect to the second prerequisite, "the asserted irreparable injury 'must be neither remote nor speculative, but actual and imminent.'" Siegel, 234 F.3d at 1176.

Plaintiff fails to demonstrate he is entitled to the extraordinary and drastic remedy of injunctive relief. First, Plaintiff's self-serving allegations do not demonstrate he is likely to succeed on the merits of any of the claims he attempts to raise in his complaint. As explained more below, Plaintiff fails to set forth his claims sufficiently. Even if Plaintiff adequately pleads some

claims, however, his unsubstantiated allegations are not enough to demonstrate entitlement to injunctive relief. See S. Wine & Spirits of Am., Inc. v. Simpkins, No. 10-21136-Civ, 2011 WL 124631, at *2 (S.D. Fla. Jan. 14, 2011) ("A substantial likelihood of success on the merits is shown if good reasons for anticipating that result are demonstrated. It is not enough that a merely colorable claim is advanced.").

Additionally, Plaintiff's allegations of past harm and abuse do not satisfy the "irreparable injury" requirement. Siegel, 234 F.3d at 1176. Finally, the relief Plaintiff seeks—essentially, a directive to prison officials not to violate Plaintiff's constitutional rights—does not satisfy Rule 65's specificity requirement. See Fed. R. Civ. P. 65(d)(1) (requiring an order granting injunctive relief to "state its terms specifically and describe in reasonable detail . . . the act or acts restrained or required" (internal punctuation and numbering omitted)). See also Burton v. City of Belle Glade, 178 F.3d 1175, 1201 (11th Cir. 1999) (holding the district court "correctly determined that an injunction ordering the City not to discriminate in [the] future . . . would not satisfy the specificity requirements of the Federal Rules of Civil Procedure").

To the extent Plaintiff wants the Court to direct prison officials where to house him—for instance, away from certain officers—Plaintiff should know that courts generally will not interfere in matters of prison administration,

including an inmate's custody status or location of confinement. <u>See</u> <u>Bell v. Wolfish</u>, 441 U.S. 520, 547-48 (1979) ("[T]he operation of our correctional facilities is peculiarly the province of the Legislative and Executive Branches … not the Judicial."). <u>See also</u> <u>McKune v. Lile</u>, 536 U.S. 24, 39 (2002) ("It is well settled that the decision where to house inmates is at the core of prison administrators' expertise."). Accordingly, Plaintiff's motion (Doc. 2) is due to be denied.

**Direction to Amend**

Plaintiff has failed to set forth his claims sufficiently. Thus, the Court will direct him to file an amended complaint in compliance with federal pleading standards, as set forth below.

The Federal Rules of Civil Procedure require a plaintiff to provide "a <u>short</u> and <u>plain</u> statement of the claim showing that [he] is entitled to relief." Fed. R. Civ. P. 8(a)(2) (emphasis added). All averments of the claim should be made "in numbered paragraphs, each limited as far as practicable to a single set of circumstances." Fed. R. Civ. P. 10(b). To survive dismissal, a complaint must allege facts that, accepted as true, state a claim "that is plausible on its face." <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009). The standard asks for less than a probability but "more than a sheer possibility that a defendant has acted unlawfully." <u>Id.</u> Though a plaintiff is not required to provide "detailed factual

allegations," he must offer more than "naked assertion[s] devoid of further factual enhancement." Id. (internal quotation marks omitted).

Plaintiff's complaint is deficient because the allegations are not short and plain, and he includes multiple, unrelated claims in one complaint. Plaintiff does not set forth his allegations in numbered paragraphs but rather includes a rambling narrative explaining unrelated incidents or perceived violations spanning nearly one year. In doing so, Plaintiff includes unnecessary, extraneous information and conclusory statements. Additionally, Plaintiff fails to explain how each named Defendant was involved in the alleged constitutional violations. In fact, he names some Defendants against whom he lodges no factual allegations.

In this regard, Plaintiff's complaint constitutes a "shotgun pleading." A "shotgun pleading" is one that fails to give the named defendants "adequate notice of the claims against them and the grounds upon which each claim rests." Weiland v. Palm Bch. Cnty. Sheriff's Off., 792 F.3d 1313, 1323 (11th Cir. 2015). Plaintiff's complaint "is drafted in such a way as to require sifting through allegations to attempt to separate meritorious from unmeritorious claims, resulting in a waste of resources and a failure to notify the Court or [d]efendants of the claims or the grounds upon which the claims rest." See Brown v. Citizens Prop. Ins. Corp., No. 8:19-cv-1951-T-36SPF, 2019 WL

4221717, at *3 (M.D. Fla. Sept. 5, 2019) (dismissing the shotgun complaint with leave to amend).

If Plaintiff wishes to proceed, he must submit an amended complaint, adhering to the instructions on the enclosed complaint form and those in this Order.

1. The amended complaint must be marked, "Amended Complaint."

2. The amended complaint must name as defendants only those who had been acting under color of state law and are responsible for the alleged constitutional violation.

3. The amended complaint must state the full names of each defendant (to the extent Plaintiff knows them) in the style of the case on the first page and in section I.B.

4. The list of defendants named on the first page must match the list of named defendants in section I.B.

5. The amended complaint (or a separate filing) must include current addresses for each defendant.

6. In section IV, "Statement of Claim," there must be a clear description of how **each** defendant was involved in the alleged violation(s). The allegations should be stated in numbered paragraphs, each limited to a single set of circumstances. Plaintiff should separately explain the facts giving rise to his individual claims for relief, and he should clearly state how each defendant is responsible for each alleged violation.[2]

7. In section V, "Injuries," there must be a statement concerning how **each** defendant's action or omission injured Plaintiff.

---

[2] Plaintiff may attach additional pages if necessary, but he should continue to number the paragraphs for a clear presentation of his factual allegations supporting each claim.

11

8.   In section VI, "Relief," there must be a statement of what Plaintiff seeks through this action.[3]

9.   In section VII, "Exhaustion," Plaintiff must explain the steps he took to exhaust each claim.[4]

Plaintiff also should keep in mind the following legal principles. First, to state a claim under 42 U.S.C. § 1983, a plaintiff must allege the conduct complained of was committed by a person acting under color of state law, and the conduct deprived the plaintiff of rights, privileges, or immunities secured by the Constitution or laws of the United States. A negligent or intentional deprivation of personal property does not constitute a due process violation if a meaningful post-deprivation remedy is available. Hudson v. Palmer, 468 U.S. 517, 533 (1984).

Second, liability under § 1983 may not be premised on a theory of vicarious liability. To proceed against a supervisor, such as a warden or the Secretary of the FDOC, a plaintiff must identify a policy or custom that was the moving force behind a constitutional violation. Hartley v. Parnell, 193 F.3d 1263, 1269 (11th Cir. 1999); Craig v. Floyd Cnty., 643 F.3d 1306, 1310 (11th

---

[3]   Plaintiff is advised that "[t]he [Prison Litigation Reform Act (PLRA)] places substantial restrictions on the judicial relief that prisoners can seek . . . ." Brooks v. Warden, 800 F.3d 1295, 1307 (11th Cir. 2015) (quoting Al-Amin v. Smith, 637 F.3d 1192, 1195 (11th Cir. 2011)).

[4]   "A prisoner must exhaust each claim that he seeks to present in court." Arias v. Perez, 758 F. App'x 878, 881 (11th Cir. 2019) (citing Jones v. Bock, 549 U.S. 199, 219-20 (2007)).

Cir. 2011). Mere conclusory allegations of a policy or custom will not suffice. See Iqbal, 556 U.S. at 679 ("While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations.").

Third, an inmate has no constitutionally protected interest in a prison grievance procedure. Bingham v. Thomas, 654 F.3d 1171, 1177 (11th Cir. 2011). Fourth, placing an inmate on seventy-two-hour strip status with only boxers in not necessarily a violation of the Eighth Amendment. See Woodson v. Whitehead, 673 F. App'x 931, 932 (11th Cir. 2016) ("Confinement without clothing (other than boxers), bedding, or hygienic materials for 72 hours during the months of April and August in Florida is not the type of extreme prison condition[] that create[s] a substantial risk of serious harm.").

Fifth, a plaintiff may not join unrelated claims and various defendants in one complaint unless the claims arise "out of the same transaction, occurrence, or series of transactions or occurrences" and if "any question of law or fact common to all defendants will arise in the action." Fed. R. Civ. P. 20(a)(2). As recognized by the Eleventh Circuit, "a claim arises out of the same transaction or occurrence if there is a logical relationship between the claims." Constr. Aggregates, Ltd. v. Forest Commodities Corp., 147 F. 3d 1334, 1337 n.6 (11th Cir. 1998) (quotations and citation omitted). Finally, an amended complaint supersedes the filing of the initial complaint and becomes the

operative pleading. <u>Krinsk v. SunTrust Banks, Inc.</u>, 654 F.3d 1194, 1202 (11th Cir. 2011).

Plaintiff must sign and date the amended complaint after the following statement on the form:

> Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

Before signing the amended complaint, Plaintiff must ensure his assertions are truthful and he has not knowingly made false material declarations. He must neither exaggerate nor distort the facts but instead must truthfully state the facts underlying his claims. Knowingly making a false material declaration in violation of 18 U.S.C. § 1623 is punishable by a fine, imprisonment, or both.

Accordingly, it is now

**ORDERED:**

1.     Plaintiff's motion for a temporary restraining order and preliminary injunction (Doc. 2) is **DENIED**.

2.     By **July 22, 2022**, Plaintiff must mail an amended complaint to the Court for filing. The amended complaint should comply with the instructions on the form and those provided in this Order. Plaintiff may proceed in this case on <u>one</u> issue or incident or related incidents. He may initiate new cases by filing separate civil rights complaints to pursue any claims unrelated to those he seeks to pursue in this case. Plaintiff's amended complaint must be complete, including all related claims he wishes to raise and must not refer to his original complaint.

3.     The **Clerk** shall send Plaintiff a civil rights complaint form.

4.     By **July 22, 2022**, Plaintiff shall pay the $402 filing fee or complete and file an application to proceed in forma pauperis accompanied by a copy of his prison account statement for the six months preceding the filing of the complaint.

5.     Plaintiff's failure to comply with this Order may result in the dismissal of this case.

**DONE AND ORDERED** at Jacksonville, Florida, this 22nd day of June

2022.

_____
BRIAN J. DAVIS
United States District Judge

Jax-6
c:
Christopher Sanders

16