UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

CHRISTOPHER SANDERS,

        Plaintiff,

v.                                       Case No. 3:22-cv-668-BJD-PDB

MARK INCH, et al.,

        Defendants.
_____

**ORDER**

**I. Status**

Plaintiff, an inmate of the Florida Department of Corrections (FDC), is proceeding on a second amended complaint for the violation of civil rights (Doc. 26; Sec. Am. Compl.) against twelve Defendants, including Mental Health Counselors Smith and Dahlman.[1] Plaintiff alleges Defendants Smith and Dahlman, each on a different occasion at Florida State Prison (FSP), ignored him when he said he was having a mental health emergency or was suicidal and made a suicidal gesture in their presence—he swallowed a handful of pills.

---

[1] Plaintiff numbers the paragraphs in his complaint, but he starts each section (the facts, injuries, claims, etc.) over from one. When citing the factual allegations, which span pages six through nineteen, the Court will use paragraph numbers (i.e., "Sec. Am. Compl. ¶ 1"). When citing Plaintiff's injuries and claims, the Court will use page numbers as assigned by the Court's electronic docketing system (i.e., "Sec. Am. Compl. at 20").

*See* Sec. Am. Compl. ¶¶ 14-16, 62-63. Each incident occurred in connection with a planned use of force by other Defendants who Plaintiff alleges routinely abused or threatened him. *Id.* ¶¶ 13-14, 27, 61-62. Defendants Smith and Dahlman conducted a crisis intervention prior to the respective use-of-force (chemical spray the first time, involving Smith, and a cell extraction the second time, involving Dahlman). *Id.* ¶¶ 14, 27, 62.

Plaintiff alleges that neither Smith nor Dahlman intervened when he allegedly swallowed pills in their presence, nor did they notify medical of the incident, and he only received medical treatment for an overdose after he was taken to the medical unit following each planned use of force. *Id.* ¶¶ 16, 20, 32, 63, 83-84. He contends such conduct constitutes deliberate indifference in violation of the Eighth Amendment. *Id.* at 24. Plaintiff further alleges Defendant Dahlman did not report or document each incident of self-harm or his complaints of staff abuse. *Id.* ¶¶ 33, 89. According to Plaintiff, such failure also constitutes deliberate indifference. *Id.* at 23-24.

Defendants Smith and Dahlman move to dismiss the claims against them under Federal Rule of Civil Procedure 12(b)(6), arguing Plaintiff's allegations do not plausibly permit the inference that they were deliberately indifferent to his serious medical needs or a risk of harm (Doc. 32; Def. Mot.). Plaintiff opposes the motion (Doc. 51; Pl. Resp.).

Also before the Court is Plaintiff's emergency motion for a temporary restraining order (TRO) (Doc. 99; Pl. Mot.).

## II. Motion to Dismiss

### A. Standard of Review

A defendant may move to dismiss a complaint for a plaintiff's "failure to state a claim upon which relief may be granted." Fed. R. Civ. P. 12(b)(6). In ruling on such a motion, the court must accept the plaintiff's allegations as true, liberally construing those by a plaintiff proceeding *pro se*, but need not accept as true legal conclusions. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Though detailed factual allegations are not required, Rule 8(a) demands "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* A plaintiff should allege enough facts "to raise a reasonable expectation that discovery will reveal evidence" supporting the plaintiff's claims. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007).

### B. Analysis & Conclusions

With respect to Plaintiff's alleged suicidal gestures (swallowing pills), Defendants argue Plaintiff fails to state a plausible deliberate indifference claim because he does not allege what the pills were that he swallowed or that he suffered "any ill effect." *See* Def. Mot. at 5. They suggest Plaintiff merely alleges a disagreement with medical treatment or that "more should have been

3

done" to treat him. *Id.* at 6-7. With respect to the alleged failure to report incidents and abuse, Defendants argue Plaintiff does not allege they had a duty to "alleviate his situation," and his allegations do not "fit into a claim for deliberate indifference." *Id.* at 7.

As to the latter argument, Plaintiff faults Defendant Dahlman (not Smith) for failing or refusing to prepare an incident report documenting his "claims of staff abuse" on two occasions. *See* Sec. Am. Compl. ¶¶ 33, 89. A prison official's mere refusal to report a prisoner's complaints about a past harm, without more, does not amount to deliberate indifference. *See Marbury v. Warden*, 936 F.3d 1227, 1238 (11th Cir. 2019) (explaining that a prison official's "failure to investigate [an inmate's] allegations of threats or to follow policy in reporting potential threats up the chain of command" does not constitute deliberate indifference absent allegations or proof of the official's "subjective awareness of a serious risk of harm").

Even if Defendant Dahlman had an obligation to report Plaintiff's complaints of staff abuse, Plaintiff does not allege he was seeking protection from a particularized threat of harm. *See Brooks v. Warden*, 800 F.3d 1295, 1301 (11th Cir. 2015) (holding the plaintiff's allegation that a "mere possibility" of future harm existed was insufficient; he did not "plausibly allege a strong likelihood of serious harm"); *Carter v. Galloway*, 352 F.3d 1346, 1349 (11th Cir.

4

2003) ("Even assuming the existence of a serious risk of harm and legal causation, the prison official must be aware of specific facts from which an inference could be drawn that a substantial risk of serious harm exists—and the prison official must also 'draw that inference.'"). Plaintiff's allegations suggest he merely wanted a written record of his complaints. Absent allegations that Plaintiff was seeking protection from a particularized threat of harm, Plaintiff fails to state a plausible deliberate indifference claim against Defendant Dahlman based on a failure to file incident reports.

On the other hand, accepting as true that Defendants Smith and Dahlman each ignored an alleged suicide attempt, Plaintiff states a plausible deliberate indifference claim against them. The Eleventh Circuit has long recognized that a prison official's "deliberate indifference to an inmate's need for mental health care is actionable on eighth amendment grounds." *Greason v. Kemp*, 891 F.2d 829, 834 (11th Cir. 1990). *See also Waldrop v. Evans*, 871 F.2d 1030, 1033 (11th Cir. 1989) ("[A] prison inmate has the right under the Eighth Amendment to be free from deliberate indifference to serious physical or psychiatric needs.").

> To be deliberately indifferent to a strong likelihood that the prisoner will harm himself, the official must be subjectively aware that the combination of the prisoner's self-harm tendencies and the feasibility of self-harm in the context of the prisoner's surroundings creates a strong likelihood that the prisoner will self-

5

> inflict harm. *See Gish v. Thomas*, 516 F.3d 952, 954-55 (11th Cir. 2008).

*Watson v. Edelen*, 76 F. Supp. 3d 1332, 1369 (N.D. Fla. 2015).

In *Waldrop*, the Eleventh Circuit held there was a genuine issue of material fact whether a physician who knew of the plaintiff's mental health background "should have taken *some* action in response to [the plaintiff's] psychiatric needs after [the plaintiff] slashed his own arm." 871 F.2d at 1036 (emphasis in original). The court concluded the physician's decision not to notify the prison psychiatrist because the physician presumed that the plaintiff cut himself simply "to attract attention" was akin to failing to respond to a known medical condition. *Id.* (citing *Ancata v. Prison Health Servs., Inc.*, 769 F.2d 700, 704 (11th Cir. 1985)). *See also Jackson v. Lanier*, No. 5:19-cv-114-MCR/MJF, 2021 WL 6339036, at *10-11 (N.D. Fla. Nov. 29, 2021), *report and recommendation adopted*, 2022 WL 94929 (N.D. Fla. Jan. 10, 2022) (finding the plaintiff stated a plausible deliberate indifference claim where he alleged a prison official watched him attempt to hang himself but did nothing to intervene and further alleged the prison official's conduct caused him physical and emotional injuries).

Accepting Plaintiff's allegations as true, and liberally construing them, the Court finds Plaintiff plausibly alleges a deliberate indifference claim against Defendants Smith and Dahlman. He explicitly alleges, or his

allegations permit the reasonable inference, that (1) he had a serious psychiatric need; (2) both Smith and Dahlman knew he had mental health issues—they were mental health counselors called to Plaintiff's cell to conduct a crisis intervention before a planned use-of-force, and Defendant Dahlman knew Plaintiff previously swallowed pills in a proclaimed suicide attempt; (3) while in the midst of a psychological emergency, Plaintiff took an overt action in Defendants' presence to harm himself or commit suicide—he swallowed a handful of unidentified pills; and (4) Defendants ignored Plaintiff's overt suicidal gesture—Defendant Smith left Plaintiff in his cell for "several hours" after he swallowed the pills, and neither Defendant offered Plaintiff mental health intervention or informed medical that he had potentially overdosed on medication and needed medical attention. *See* Sec. Am. Compl. ¶¶ 14-16, 20, 22, 62-63, 83, 105. Plaintiff further alleges Defendants' conduct caused him physical and mental pain and suffering. *Id.* at 24.

In sum, Plaintiff alleges enough facts "to raise a reasonable expectation that discovery will reveal evidence" supporting his claims that Defendants Smith and Dahlman were deliberately indifferent to his proclaimed suicide attempts. *See Twombly*, 550 U.S. at 556.

7

## III. Plaintiff's Motion

In his emergency motion, mailed on November 3, 2023, and docketed on November 6, 2023,[2] Plaintiff contends that he was recently transferred to Tomoka Correctional Institution (TCI) for mental health treatment, and since his transfer, he has been harassed and threatened because of this lawsuit. *See* Pl. Mot. ¶¶ 1-2. He asserts that Warden Bennett, a Defendant in this case, "sent a hit for [him] because of his lawsuit." *Id.* ¶ 3. Apparently in response to the "hit," a corrections officer (Captain Ard) paid an inmate to attack Plaintiff on October 31, 2023, while Plaintiff was "cuffed to a table," and Captain Ard has attempted to instigate Plaintiff to harm himself. *Id.* ¶¶ 4-9. Plaintiff further alleges Captain Ard has been interfering with his mental health treatment. *Id.* ¶ 12.[3] He contends the "head of mental health knows about . . . the psychological effects being chained to a table [has on Plaintiff] and is refusing to have [him] properly evaluated." *Id.* ¶ 11. Plaintiff asks the Court to enter a TRO, saying that without one, he "will be and is in imminent danger."

---

[2] The Court acknowledges it is ruling on Plaintiff's motion before awaiting a response from Defendants. However, given the "emergency" nature of the motion, which is facially deficient, the Court finds it prudent to rule on the motion without awaiting a response.

[3] In light of Plaintiff's assertions, the Clerk of Court sent a copy of Plaintiff's motion (Doc. 99) and the Court's Amended Standing Order (Doc. 100) that is entered when an inmate makes a claim of suicidal intent or other imminent physical harm to the Inspector General and to the Warden of Plaintiff's institution.

*Id.* ¶ 14. He asks to be "properly evaluated [by] mental health doctors immediately."

Injunctive relief, whether in the form of a temporary restraining order or a preliminary injunction,[4] "is an 'extraordinary and drastic remedy,' and [the movant] bears the 'burden of persuasion.'" *Wreal, LLC v. Amazon.com, Inc.*, 840 F.3d 1244, 1247 (11th Cir. 2016) (quoting *Siegel v. LePore*, 234 F.3d 1163, 1176 (11th Cir. 2000)). To demonstrate entitlement to injunctive relief, a movant must show the following four prerequisites:

> (1) a substantial likelihood of success on the merits; (2) that irreparable injury will be suffered if the relief is not granted; (3) that the threatened injury outweighs the harm the relief would inflict on the non-movant; and (4) that entry of the relief would serve the public interest.

*Schiavo ex rel. Schindler v. Schiavo*, 403 F.3d 1223, 1225-26 (11th Cir. 2005). With respect to the second prerequisite, "the asserted irreparable injury 'must be neither remote nor speculative, but actual and imminent.'" *Siegel*, 234 F.3d at 1176. Moreover, the request for injunctive relief must be related to the claims raised in the operative complaint. *See Kaimowitz v. Orlando, Fla.*, 122

---

[4] The primary distinction between a temporary restraining order and a preliminary injunction is that the former is issued *ex parte*, while the latter requires "notice to the adverse party." Fed. R. Civ. P. 65(a), (b). *See also* M.D. Fla. R. 6.01, 6.02 (describing the requirements for the issuance of temporary restraining orders and preliminary injunctions).

F.3d 41, 43 (11th Cir. 1997), *opinion amended on reh'g*, 131 F.3d 950 (11th Cir. 1997) ("A district court should not issue an injunction when the injunction in question is not of the same character, and deals with a matter lying wholly outside the issues in the suit.").

Despite the seriousness of his allegations, Plaintiff fails to carry his burden demonstrating injunctive relief is warranted. Facially, the motion is deficient because Plaintiff has not filed a memorandum of law supporting his request, *see* M.D. Fla. R. 3.01(a), 6.01(a), 6.02(a)(1), and he does not include a "precise and verified description of the conduct and the persons subject to restraint," *see* M.D. Fla. R. 6.01(a), 6.02(a)(1). *See also* Fed. R. Civ. P. 65(d)(1) (requiring an order granting injunctive relief to "state its terms specifically and describe in reasonable detail . . . the act or acts restrained or required" (internal punctuation and numbering omitted)); 18 U.S.C. § 3626(a) (requiring that a court ensure any prospective relief in an action related to prison conditions "is narrowly drawn, extends no further than necessary to correct the violation . . . and is the least intrusive means to correct the violation").[5]

Even if Plaintiff's motion were facially sufficient, he does not address the underlying claims against Defendants. In other words, Plaintiff fails to

---

[5] Plaintiff also does not include a certificate of service certifying that he sent a copy of the motion to opposing counsel. *See* Fed. R. Civ. P. 5(d)(1); *see also* Notice to Pro Se Litigant (Doc. 9).

demonstrate a likelihood of success on the merits of his claims. To obtain the drastic remedy of injunctive relief, a plaintiff must do more than state a colorable or cognizable claim. *See S. Wine & Spirits of Am., Inc. v. Simpkins*, No. 10-21136-Civ, 2011 WL 124631, at *2 (S.D. Fla. Jan. 14, 2011) ("A substantial likelihood of success on the merits is shown if good reasons for anticipating that result are demonstrated. It is not enough that a merely colorable claim is advanced.").

For the above reasons, Plaintiff's motion is due to be denied. To the extent Plaintiff believes that prison officials have recently violated his rights, he has not filed a civil rights complaint form against them. If Plaintiff wants to pursue a civil rights action against individuals at TCI or a retaliation claim against Defendant Bennett, he may initiate a new case by filing a new complaint after exhausting his administrative remedies. The Clerk will send him a blank civil rights complaint form for his use.[6]

---

[6] To the extent Plaintiff intends to pursue litigation arising out of the incidents at TCI and he wants the FDC to preserve any available video footage, he should submit appropriate, timely grievances in accordance with FDC's policies. *See, e.g.*, *Stanfill v. Talton*, 851 F. Supp. 2d 1346, 1361 (M.D. Ga. 2012) (explaining that future litigants have a duty to preserve crucial evidence only when litigation is "reasonably foreseeable").

Accordingly, it is now

**ORDERED:**

1. Defendants Smith and Dahlman's motion to dismiss (Doc. 32) is **GRANTED in part** and **DENIED in part**. The motion is **GRANTED** to the extent Plaintiff fails to state a plausible deliberate indifference claim against Defendant Dahlman for an alleged failure to report incidents or Plaintiff's complaints of abuse. The motion is **DENIED** to the extent Plaintiff states a plausible deliberate indifference claim against Defendants Smith and Dahlman for their alleged response or lack thereof to Plaintiff's proclaimed suicide attempts.

2. Within **twenty days** of the date of this Order, Defendants Smith and Dahlman must answer the complaint (Doc. 26).

3. Plaintiff's emergency motion for TRO (Doc. 99) is **DENIED**.

4. The **Clerk** shall send Plaintiff a blank civil rights complaint form (prisoner filings). If Plaintiff chooses to initiate a new case, he should not put this case number on the form. The Clerk will assign a new case number upon receipt.

5. Plaintiff is reminded that each document he files must include a certificate of service certifying that he sent a copy of the document to the opposing side's lawyer and a statement of the date sent, the method of delivery,

and the address used. *See* Notice to Pro Se Litigant (Doc. 9). Future filings that lack a certificate of service may be stricken or denied.

**DONE AND ORDERED** at Jacksonville, Florida, this 8th day of November 2023.

                                                                 _____
                                                                 BRIAN J. DAVIS
                                                                 United States District Judge

Jax-6
c:
Christopher Sanders
Counsel of Record